UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ZAHIDA PEJMANOVIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-156 JAR |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Zahida Pejmanovic's ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.

**I.   Background**

Plaintiff filed an application for disability insurance benefits on June 25, 2013, alleging disability beginning January 15, 2010. After her application was denied at the initial administrative level, she requested a hearing before an administrative law judge ("ALJ"). Following a hearing on September 30, 2014, the ALJ issued a written decision on October 10, 2014, finding that Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work and was thus not disabled under the Act. Plaintiff's request for review by the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Appeals Council was denied on December 17, 2015. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See <u>Sims v. Apfel</u>, 530 U.S. 103, 107 (2000). In her appeal of the Commissioner's decision, Plaintiff challenges the ALJ's RFC and credibility determinations.

## II.     Facts[2]

Plaintiff is forty-nine years old with an eighth grade education (Tr. 28-29). She has worked in a laundry (Tr. 41) and as a bottle packer (Tr. 43). Plaintiff alleges disability due to severe abdominal pain that at times causes her to lose consciousness (Tr. 29-30). She testified that she frequently left work early or been absent as a result and had not been called back to work after January 15, 2010, her alleged onset date (Tr. 29-30, 41-42). Plaintiff was receiving medical treatment at that time but stopped prescribed medication due to adverse side effects of throat and neck discomfort (Tr. 30-31). She did not receive further medical treatment until 2012 due to a loss of medical insurance (Tr. 31). Plaintiff was prescribed medication for stomach pain as well as shoulder and spine pain (Tr. 31). She was also prescribed medication for high cholesterol, high blood pressure, depression and anxiety (Tr. 32). Her medications caused her to vomit at times and she generally did not feel well (Tr. 32).

Plaintiff typically went to bed at midnight and was up at 5 a.m. (Tr. 33). She wakes frequently during the night because she has bad dreams; however, she never naps during the day (Tr. 33). She did little at home but walk through the house because of the pain she experiences in her right shoulder and arm. It was her testimony that she has had this pain for four or five years, but it has recently become worse (Tr. 33-34). She does not wear a brace or any other supportive

---

[2] The Court notes that neither party has complied with its February 5, 2016 Case Management Order requiring Plaintiff to attach a statement of uncontroverted material facts to the brief in support of the complaint, and requiring the Commissioner to attach a response to Plaintiff's statement of facts as well as any statement of additional material facts, all supported by citations to the administrative transcript. (Doc. No. 5) Because the issues on appeal are straightforward and the administrative record is not voluminous, the Court will proceed to consider Plaintiff's appeal.

device on her arm, back or legs (Tr. 34). Plaintiff described some difficulty showering and doing household chores, but stated she was able to dress and tie her shoes (Tr. 35). She had a car and drove short distances (Tr. 39). She also walked short distances as needed. Plaintiff rarely left home other than to shop or go to the doctor (Tr. 34-35), and socialized only with family (Tr. 40). She said she could not stand or walk for more than perhaps 30 minutes due to pain and dizziness and nausea (Tr. 36-37). She had vomiting episodes 3-4 times per day (Tr. 37). She would often have a headache and need to sit and rest (Tr. 37). She is very anxious and had difficulty starting and finishing tasks such as washing dishes (Tr. 38). When she baby-sits for her granddaughter, someone is always in the house with her. Her anxiety had been ongoing at least 20 years with traumatic recollections of war in her home country, Bosnia (Tr. 37-38, 41).

### III. Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

3

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The severity of mental disorders is determined by rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the "paragraph

4

B" criteria). § 404.1520a(c)(3). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the

Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV. Decision of the ALJ

The ALJ found that Plaintiff had the severe impairments of gastroesophageal reflux disease (GERD), hypertension, high cholesterol, obesity, depression, anxiety, and insomnia but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In assessing Plaintiff's mental impairments at steps two and three of the disability evaluation, the ALJ considered the "paragraph B" criteria discussed above and concluded that Plaintiff was only mildly restricted in activities of daily living. The ALJ also found Plaintiff had moderate difficulties in social functioning, and in concentration, persistence and pace. Plaintiff had experienced no episodes of decompensation and was receiving no mental health care. (Tr. 16)

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she required simple, routine, and repetitive tasks with no close interaction with the public or teamwork or similar such interaction with coworkers. The ALJ relied on the testimony of a vocational expert who opined that an individual with Plaintiff's RFC and vocational factors could perform her past relevant work as a bottle packer and laundry worker. Thus, the ALJ found Plaintiff was not disabled as defined by the Act.

## V. Discussion

In her appeal, Plaintiff challenges the ALJ's RFC and credibility determinations. A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

**Credibility**

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to his determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible (Tr. 17). In evaluating a claimant's credibility, the ALJ is required to apply the factors from Polaski, 739 F.2d at 1322, which

include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ may not, however, discount a claimant's allegations of disabling pain simply because the objective medical evidence does not fully support those claims. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Plaintiff argues that the ALJ did not discuss all of the Polaski factors in his decision. An ALJ is not required to discuss each of these factors; it is sufficient that the ALJ acknowledges and considers the factors prior to discounting the claimant's subjective complaints. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Moore, 572 F.3d at 524; see also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ("Although the ALJ did not explicitly discuss each Polaski factor in a methodical fashion, he acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain.").

In his decision, the ALJ credited Plaintiff's steady past work and apparent motivation to work, but noted this was one of many factors to be considered (Tr. 19). The ALJ identified several reasons for discounting Plaintiff's credibility. First, the ALJ noted that Plaintiff sought little medical treatment as of her alleged onset date and up to her date last insured (Tr. 19).

8

Plaintiff testified this was because she lost her medical coverage (Tr. 31). The Court notes that in some circumstances, failure to seek medical treatment based on limited resources may explain a plaintiff's failure. See Walker v. Astrue, No. 4:08CV388 MLM, 2009 WL 586585, at *16 (E.D. Mo. Mar. 6, 2009) (citing cases). Here, however, as noted by the ALJ, Plaintiff did not even seek emergency care, despite her allegation that she was losing consciousness due to pain and vomiting multiple times daily (Tr. 19). A "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain. Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987); Timbrook v. Colvin, No. 2:14CV009 TIA, 2015 WL 331799, at *11 (E.D. Mo. Jan. 23, 2015).

Second, the objective medical evidence of record did not support Plaintiff's allegations of disability. The treatment notes and clinical findings showed no unusual weight loss, malnutrition, or dehydration, despite Plaintiff's allegation of abdominal pain with nausea and vomiting multiple times per day (Tr. 18-19). The evidence showed that at various times during the relevant period, Plaintiff was prescribed medications for headaches, stomach ulcers, high cholesterol, hypertension, depression and anxiety (Tr. 336, 346, 351-52); however, she was not prescribed any strong pain medications, despite her allegations of disabling pain (Tr. 19, 285-87, 289, 291-92, 294-95, 297, 299, 301, 303, 304, 323, 331, 333, 355, 357, 359, 363). See Masterson v. Barnhart, 363 F.3d 731, 739 (8th Cir. 2004) (ALJ properly considered that claimant did not take narcotic pain medication in finding her complaint of extreme pain not credible); Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999). In addition, the ALJ noted that Plaintiff generally had normal neuropsychiatric examinations, limited instances of musculoskeletal pain, and no significant mental status abnormalities (Tr. 18-19, 18, 256, 260-61, 285, 287, 290, 297, 300, 327, 348, 358). The absence of an objective medical basis to support the degree of subjective complaints is an

important factor in evaluating the credibility of the claimant's testimony and complaints. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); see also Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004).

Third, Plaintiff remained active caring for her personal needs and babysitting for her grandchild. She prepared simple meals and did laundry, shopped for needed items and attended medical appointments on her own. She had a car and continued to drive. (Tr. 18-19) To be sure, the ability to do these kinds of activities alone is insufficient reason to discredit Plaintiff's subjective complaints. See Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996). But the extent of her activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (collecting cases).

The ALJ also noted that Plaintiff had not sought mental health care (Tr. 19). Plaintiff responds that while she did not seek treatment from a psychiatrist, the record evidence shows she was being treated for depression and anxiety. The ALJ acknowledged that Plaintiff was anxious and was prescribed medication (Tr. 18-19). Indeed, the ALJ did not accept the opinion of the State agency psychologist's opinion that Plaintiff had no medically determinable mental impairment, finding instead that she had "severe depression and anxiety with insomnia resulting in moderate limitations in social functioning and concentration, persistence and pace." (Tr. 18) The ALJ also noted, however, that Plaintiff's son reported that she handles stress well. (Tr. 19) Moreover, her mental status examinations were generally normal (Tr. 19, 256, 260, 261, 290, 296, 297, 332, 348, 354, 359, 362). Accordingly, the ALJ properly considered that Plaintiff's mental conditions were not significant enough to warrant mental health care. The ALJ did not err in considering this factor in evaluating Plaintiff's credibility. See Kirby v. Astrue, 500 F.3d 705,

709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating claimant's allegations of disability due to a mental impairment).

Lastly, the ALJ noted that no treating or examining medical source placed any restrictions on Plaintiff's physical or mental activities, and instead encouraged her to exercise and maintain a healthy diet (Tr. 19). See Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir.1996) (lack of significant medical restrictions imposed by treating physicians supported the ALJ's decision of no disability).

In sum, the Court finds the ALJ considered Plaintiff's subjective complaints on the basis of the entire record and set out a number of inconsistencies that detracted from her credibility. Because the ALJ's determination not to credit Plaintiff's subjective complaints is supported by good reasons and substantial evidence, the Court defers to his determination. Cobb v. Colvin, No. 2:13CV0115 TCM, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski, 739 F.2d at 1322.

**RFC**

Plaintiff argues the ALJ's decision is not based on substantial evidence because it lacks any expert assessment of her mental or physical RFC. According to Plaintiff, the ALJ "simply summarized" the medical evidence and determined the RFC without setting forth any rationale for his decision or reference to the supporting evidence. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). However, there is no requirement that an RFC finding be supported by a specific medical opinion. Id. (citing Myers v.

Colvin, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); Perks v. Astrue, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)); see also Kinder v. Berryhill, No. 1:16CV7ACL, 2017 WL 1177707, at *7-8 (E.D. Mo. March 30, 2017). In the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." Hensley, 829 F.3d at 932 (quoting Johnson v. Astrue, 628 F.3d 991, 995 (8th Cir. 2011)).

In determining Plaintiff's RFC, the ALJ considered the record evidence as a whole, including Plaintiff's treatment records and an assessment of her credibility. The ALJ relied upon medical evidence showing normal neuropsychiatric examinations and limited musculoskeletal pain (Tr. 18, 256, 260, 261, 285, 287, 290, 297, 300, 327, 348, 358). Her mental status was typically normal (Tr. 19, 256, 260, 261, 290, 296, 297, 332, 348, 354, 359, 362). The ALJ also found Plaintiff able to perform daily activities including caring for her personal needs, babysitting her four-year-old grandchild, driving, preparing simple meals, shopping, handling stress, remembering things, and going places on her own (Tr. 16, 18-19, 41, 182, 183, 184, 187, 205, 284). Based on the credible medical and non-medical evidence of record, the ALJ accounted for Plaintiff's physical limitations and moderate difficulties in social functioning and concentration, persistence, or pace, by limiting her to light work, with simple, routine, repetitive tasks and no close interaction with the public or coworkers (Tr. 16). The Court concludes that the RFC determination is supported by some medical evidence and substantial evidence in the records as a whole. Dow v. Colvin, 174 F. Supp.3d 1074, 1079 (E.D. Mo. 2016).

## VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 27th day of April, 2017.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**